EDGAR C. MESSERSMITH, Appellant, *v.* THE AMERICAN FIDELITY COMPANY, Respondent.

Fourth Department, March 5, 1919.

**Insurance — motor vehicles — action upon automobile insurance or indemnity policy — defense — allegation that automobile was being operated by plaintiff's son under eighteen years of age in violation of Highway Law — answer.**

In an action upon an automobile insurance or indemnity policy, an allegation by the defendant that the plaintiff's son, who was under eighteen years of age, was driving the automobile at the time of the accident in violation of subdivision 2 of section 282 of the Highway Law is not a defense, where there is no allegation that the violation of the statute led to the injury or was the proximate cause thereof, and where it appears that the accident may have been caused by something breaking on the plaintiff's automobile, for which the driver was in no way at fault.

Under a life or accident insurance policy which by its terms provides that the company shall not be liable for accidental injuries or death while the insured is engaged in an unlawful or illegal act if such act is a statutory offense, the answer setting up such defense must set out all the statutory elements thereof and it must allege a causative connection between the offense and the injury sustained.

An independent legal contract of insurance founded upon a good and valid consideration is not made void by an incidental violation of the Highway Law.

FOOTE, J., and KRUSE, P. J., dissented, with opinion.

APPEAL by the plaintiff, Edgar C. Messersmith, from an order of the Supreme Court, made at the Erie Special Term and entered in the office of the clerk of the county of Erie on the 2d day of January, 1918, denying his motion for judgment on the pleadings, consisting of a complaint and the answer thereto.

*Franklin R. Brown,* for the appellant.

*Charles Newton,* for the respondent.

HUBBS, J.:

The opinion of Mr. Justice FOOTE herein fully sets forth the facts in this case.

It does not seem to me that the cases cited as authority

for sustaining the order made by the Special Term have that effect.

The case of *McMullen* v. *Hoffman* (174 U. S. 639) was an action between partners for an accounting of the profits accruing from an illegal contract. The parties entered into a fraudulent and illegal agreement to put in fictitious bids for a contract for public improvements. The court said: " In the case before us the cause of action grows directly out of the illegal contract, and if the court distributes the profits it enforces the contract which is illegal." The same principle is involved in the case of *Levy* v. *Kansas City, Kan.* (168 Fed. Rep. 524).

In *Riggs* v. *Palmer* (115 N. Y. 506) it was held that one who murdered his ancestor in order to come into possession of his property should not be permitted to take the property. In that case there was fraud and the commission of a heinous crime for the purpose of personal gain.

I do not question the principle announced in those cases. Neither do I question the proposition that if the insurance policy in question undertook by its express terms to indemnify the plaintiff against damages resulting to him because of his violation of a criminal statute he could not recover. In such a case the contract on its face would be illegal and void and to prove his cause of action the plaintiff would have to prove his contract and that, being void and illegal on its face, could not be enforced.

It seems to me, however, that there is a great difference between such a case and the case at bar.

Here the contract on its face is perfectly legal. It does not purport to indemnify the plaintiff against damages growing out of the performance of an illegal act. The insurance policy, as drawn, had been approved by the State and was issued for a valid consideration. The plaintiff in this case to make out his cause of action was not required to prove any unlawful act. In fact, all of the material allegations of the complaint are admitted, and the defendant seeks to escape the liability which the policy places upon it by an independent, affirmative defense to the effect that at the time of the accident the automobile was being driven by a boy under eighteen years of age in violation of law.

" An obligation will be enforced, though indirectly connected with an illegal transaction, if it is supported by an independent consideration, so that the plaintiff does not require the aid of the illegal transaction to make out his case." (*Armstrong* v. *American Exchange Bank,* 133 U. S. 433, 469.)

It seems to me that there is an attempt in this case to connect distinct and independent transactions and to inject into the insurance contract, which was fair and legal in itself, the illegal feature of the other independent transaction.

The independent legal contract of insurance founded upon a good and valid consideration was not made void by an incidental violation of the Highway Law. The violation of the statute was an entirely distinct and disconnected act. The issuing of the policy and the violation of the Highway Law were in no way connected. The issuing of the policy did not lead to the violation of the Highway Law in any way; it was not intended to aid or encourage such violation of the law, and it is not alleged in the answer to have had any such effect. The risks insured against are not the consequences of illegal acts, but of accidents.

In the case of *Niagara Ins. Co.* v. *De Graff* (12 Mich. 124) an action was brought to recover on a fire insurance policy which covered intoxicating liquors. The insurance company defended on the ground that the sale of such liquors was illegal. The court said: " It was claimed on behalf of the plaintiffs in error, that if these liquors can be allowed to be included in a policy, the policy will be to all intents and purposes insuring an illegal traffic; and several cases were cited involving marine policies on unlawful voyages, and lottery insurances, which have been held void on that ground. These cases are not at all parallel, because they rest upon the fact, that in each instance, it is made a necessary condition of the policy that the illegal act shall be done. * * * If this policy were in express terms a policy insuring the party selling liquors against loss by fine or forfeiture, it would be quite analogous. But this insurance attaches only to property, and the risks insured against are not the consequences of illegal acts, but of accident. * * * By insuring his property the insurance company have no concern with the use he may make of it, and as it is susceptible of

lawful uses, no one can be held to contract concerning it in an illegal manner unless the contract itself is for a directly illegal purpose. Collateral contracts, in which no illegal design enters, are not affected by an illegal transaction with which they may be remotely connected." (See, also, *Mechanics' Ins. Co.* v. *C. A. Hoover Distilling Co.*, 182 Fed. Rep. 590.)

In England it has been held that mere knowledge on the part of the vendor of property that it was to be used for any illegal purpose constitutes a defense in an action for the purchase price. The English rule has been followed by the courts of some of our States, but the great majority of our States have held that mere knowledge on the part of a vendor of property that the vendee intends to make an illegal use of the property is no defense to an action for the price. (Lawson Cont. [2d ed.] § 338; 9 Cyc. 571; *Tracy* v. *Talmage*, 14 N. Y. 162.)

*Tracy* v. *Talmage* (*supra*) is the leading case in this State holding the above proposition, and has never been questioned.

There are two well-recognized exceptions to the above rule: *First*, where the contemplated illegal act is of a highly heinous character, as where a person sells poison knowing that the purchaser intends to poison a person with it; *second*, where the vendor himself does something, besides making the sale, in aid of the illegal design, that is, where he participates in the illegal act.

It cannot be that the violation of the provisions of the Highway Law in question constituted a heinous crime or that the contract of insurance was in aid of an illegal act. There is no compelling public policy which requires that the courts should refuse their aid in enforcing the contract as written. It might be that if the contention of the defendant should be sustained in this court it would be liable on the same kind of policy in one State and not in another. The statutes in the different States might fix the age at which an infant could lawfully operate an automobile at different ages.

In the case at bar the contract is valid on its face. The defendant insurance company has received the premium, and the policy should be enforced as written. The policy is not connected with the unlawful use of the automobile and did not aid and assist the assured in any illegal purpose.

In 19 Cyc. 722, under the title " Fire Insurance," it is said: " If the direct purpose of the contract is to effect, advance or encourage acts in violation of law, it is settled that the policy is void. But it is equally well settled that a mere illegal use made of the premises, there being no provision of the policy applicable, and no design, by means of insurance, to promote an unlawful enterprise, does not affect the right of insured to recover." (See, also, 2 Clement Fire Ins. 610.)

Under a life or accident insurance policy, which by its terms provides that the company shall not be liable for accidental injuries or death while the insured is engaged in an unlawful or illegal act, if such act is a statutory offense, the answer setting up such defense must set out all the statutory elements thereof and it must allege a causative connection between the offense and the injury sustained. (1 C. J. 493, and cases cited.) In *Bradley* v. *Mutual Benefit Life Ins. Co.* (45 N. Y. 422), where the defense was that the assured came to his death in the violation of the law of the State, the court said: " It cannot be the true meaning of the proviso that the policy is to be avoided by the mere fact that, at the time of the death, the assured was violating the law, if the death occurred from some cause other than such violation."

For all that appears here, the accident may have been caused by something breaking on the plaintiff's automobile for which the driver was in no way at fault. There is no allegation in the answer that the violation of the statute led to the injury, or was the proximate cause thereof. For all that appears here, the boy driving the car may have been a most skillful driver and the injury may have been entirely without fault on his part. The violation of the statute may not have had anything whatever to do with the accident. If the violation of the statute can, under any circumstances, be a good defense to the policy in question, it cannot be under the answer as drawn because it does not allege a causative connection between the violation of the statute and the accident.

In an action for damages caused by an automobile, it is not competent to show that the automobile was not registered as required by the Highway Law, although the operation of the automobile without having it registered makes the owner

guilty of a misdemeanor. (*Hyde* v. *McCreery*, 145 App. Div. 729.)

Upon such a state of facts, could an insurance company, under a policy like the one in this case, escape liability upon the ground that the insured was operating his automobile in violation of law because he had not had it registered? It would seem to me that it could not, because there would be no causative connection between the failure to have the automobile registered and the happening of the accident. So in the case at bar, there is no connection alleged in the answer between the operation of the car by the boy under eighteen years of age driving and the happening of the accident.

I advise that the order of the Special Term be reversed and the motion for judgment on the pleadings be granted, with costs.

All concurred, except KRUSE, P. J., and FOOTE, J., who dissented in an opinion by FOOTE, J.

FOOTE, J. (dissenting):

Plaintiff appeals from an order of the Special Term denying his motion for judgment upon the pleadings. The action is upon an automobile insurance or indemnity policy issued by defendant to plaintiff, whereby defendant " agrees to indemnify the insured against loss or expense on account of bodily injuries, including death resulting therefrom, accidently suffered by any person or persons by reason of the maintenance, use, loading or unloading of any of the automobiles described in the application," subject to certain conditions stated. There is, however, no condition against liability in case the automobile is being operated in violation of law or in the commission of a crime.

While this policy was in force an accident occurred while plaintiff's son, by plaintiff's direction, was operating plaintiff's automobile described in the application, whereby the automobile was negligently and carelessly run against a woman as she was alighting from a street car, causing injuries for which, after contested trial, she recovered judgment against plaintiff for $1,265.07, which plaintiff was compelled to pay. He thereupon brought this action to recover the amount so paid. The accident occurred on March 30, 1911.

By its answer herein defendant admits the issuance of the policy, the occurrence of the accident and the recovery against plaintiff on account thereof, and alleges as a sole defense that at the time said policy was issued it was impliedly agreed between the parties that the same was issued and accepted subject to the implied condition that plaintiff should abide by the laws of the State of New York touching the operation of said automobile and would not knowingly intrust the operation thereof to incompetent persons; that at the time of the occurrence of the accident the automobile was being operated by plaintiff's son, Howard Messersmith, an infant under the age of eighteen years, not accompanied by a duly licensed chauffeur or by the owner, " with the knowledge and consent and at the direction of this plaintiff and pursuant to plaintiff's instructions, and said accident was directly caused by the improper and negligent conduct of the said infant so unlawfully operating the same; that at said time this plaintiff had full knowledge of the fact that said Howard Messersmith was an infant under the age of eighteen years." The answer also alleged that under the laws of this State a person under the age of eighteen years was incompetent to operate an automobile except when accompanied by a duly licensed chauffeur, or the owner, and such operation was a misdemeanor and punishable criminally as such.

Plaintiff, deeming this defense insufficient in law, moved for judgment upon the pleadings and contends here that such motion should have been granted. In this contention, I think, plaintiff errs.

By subdivision 2 of section 282 of the Highway Law (Consol. Laws, chap. 25 [Laws of 1909, chap. 30], as added by Laws of 1910, chap. 374) it is provided: " No person shall operate or drive a motor vehicle who is under eighteen years of age, unless such person is accompanied by a duly licensed chauffeur or the owner of the motor vehicle being operated." By subdivision 1 of section 290 (as added by Laws of 1910, chap. 374)* the violation of any of the provisions of section 282 is made a misdemeanor punishable by a fine not exceeding fifty dollars.

---

* Since amd. by Laws of 1917, chaps. 174, 769, and Laws of 1918, chap. 549.— [REP.

I take it that a policy which, in express terms, should undertake to indemnify a person against loss occasioned by the operation of his automobile by an infant in violation of this statute would be void on its face. Such a contract made in contemplation of the commission of a criminal offense would be against public policy under all the authorities. The violation of this statute is a crime according to the definition of a crime in section 2 of the Penal Law, and as the allegation is that the plaintiff expressly directed his son to commit this crime, plaintiff became a principal in the crime by the express terms of this section of the Penal Law. Plaintiff's cause of action arises out of his intentional violation of the criminal law. He has violated a statute enacted for the benefit and protection of the public, and I think we are bound to assume from the allegations of the answer that but for this violation the accident would not have occurred. The allegation is that " said accident was directly caused by the improper and negligent conduct of the said infant so unlawfully operating the same."

The lawmakers were of opinion that an infant under the age of eighteen years was not possessed of sufficient caution, judgment or experience to drive such a machine with safety to the public, and I think the fair meaning of the answer is that the accident was directly caused by permitting the machine to be operated by this infant so lacking in experience, caution and judgment, and that there was a causative connection between the violation of the statute and the injury to the woman. By this motion plaintiff concedes the facts to be as alleged in this answer and I think we should construe the answer liberally according to the fair intendment of the pleader and hold that defendant intends to allege that the accident was due to the violation of this statute and that but for such violation the accident would not have occurred. Nor do I understand plaintiff's counsel to contend here that the answer should not be so construed. The test is: Will defendant be entitled to prove upon the trial that the accident was caused by the lack of judgment, caution and experience of plaintiff's son due to his youth, or facts from which the jury may so infer? It seems to me that the answer is sufficient to permit defendant to go to the jury upon that question on proper proof and that

defendant should not be foreclosed of that right by any narrow construction of its answer which clearly was intended to raise just that question. The charge is that plaintiff violated this statute knowingly and intentionally and not as a mere matter of negligence on his part.

I think the contract should be construed as not intended to protect plaintiff against the consequences of his own violation of the criminal law, that if it was so intended it was void, and that the courts are not open to plaintiff to prosecute a cause of action so arising. In *Riggs* v. *Palmer* (115 N. Y. 506) this principle was applied in denying to a beneficiary under a will a right to the property where he himself had killed the testator for the purpose of coming into his inheritance. In the course of the opinion of Judge EARL he says: " Besides, all laws as well as all contracts may be controlled in their operation and effect by general fundamental maxims of the common law. No one shall be permitted to profit by his own fraud, or to take advantage of his own wrong, or to found any claim upon his own iniquity, or to acquire property by his own crime. These maxims are dictated by public policy, have their foundation in universal law administered in all civilized countries, and have nowhere been superseded by statutes."

In *Levy* v. *Kansas City, Kan.* (168 Fed. Rep. 524), a case in the Circuit Court of Appeals for the Eighth Circuit, it was said in the head note (opinion by SANBORN, J.): " It is a general rule of public policy and of law that no action may be maintained which arises out of the moral turpitude of the plaintiff or out of his violation of a general law enacted to effectuate the public policy of a state or nation." Also, that " The maintenance of actions to recover moneys or property lost, or damages sustained, through transactions or contracts wherein the plaintiffs were guilty of moral turpitude, or of the violation of a general law of public policy, is prohibited by this rule, as well as the maintenance of actions to enforce such contracts." In that case there was a general law of the State of Kansas prohibiting poolselling and bookmaking under a penalty of imprisonment and fine. The city council of Kansas City enacted an ordinance to the effect that any person might carry on the business of bookmaking

and poolselling in that city for an annual license fee of $5,000. The plaintiff paid the city $5,000, and received a license which two days later the city canceled. Thereupon plaintiff brought an action to recover the $5,000, but he was denied the right to prosecute the action because he was held to have been guilty of a violation of the general law of the State. In *McMullen* v. *Hoffman* (174 U. S. 639) it was held that the courts would not lend their aid in any way towards carrying out the terms of an illegal contract, or enforce any alleged rights directly springing from such contract. In the course of the opinion by Mr. Justice PECKHAM it is said: "There are several old and very familiar maxims of the common law which formulate the result of that law in regard to illegal contracts. They are cited in all law books upon the subject and are known to all of us. They mean substantially the same thing and are founded upon the same principles and reasoning. They are: *Ex dolo malo non oritur actio; Ex pacto illicito non oritur actio; Ex turpi causa non oritur actio.* The authorities from the earliest time to the present unanimously hold that no court will lend its assistance in any way towards carrying out the terms of an illegal contract."

A late expression as to the policy which should control the courts upon the general question is found in the opinion of Judge WERNER in *Hart* v. *City Theatres Co.* (215 N. Y. 322) as follows: "Courts will not be astute to sustain contracts when the effect will be to weaken the efficacy of laws and regulations designed for the protection of human life. Where a contract on its face, whether so intended by the parties or not, offends against statutes intended to promote public safety, the courts will not enforce it."

These principles, I think, stand in the way of the plaintiff maintaining this action.

I think the order appealed from should be affirmed, with costs.

KRUSE, P. J., concurred.

Order reversed, with ten dollars costs and disbursements, and motion granted, with ten dollars costs.