## FIREMAN'S FUND INS. CO. *v.* HALEY.

[92 South. 635. No. 22632.]

1. INSURANCE. *Insurer held liable for value of automobile destroyed in collision with plaintiff's machine, although plaintiff was exceeding speed law.*

   Where an insurance policy provides for the payment to the insured of a certain amount of money for which the assured shall become liable to pay as damages for property injured or destroyed through collision of his automobile with another automobile, the insurance company is liable under this policy for the value of the automobile destroyed in a collision between the automobile of the insured and that of another party, though the insured be running his automobile at the time of the collision at a speed in excess of that allowed under the state laws, where there is nothing in the policy exempting the insurance company from liability because of the violation of these laws.

2. INSURANCE. *Where policy provides that claim will be paid within sixty days after proof of loss, interest may not be charged against the insurer prior to expiration of such time.*

   Where an insurance policy provides that the claim will be paid by the insurance company within sixty days after proper proof of loss had been made to it, this amount was not due until the expiration of the sixty days, and the insurance company is not liable for interest on this amount until after that time.

APPEAL from circuit court of Leflore county.

HON. S. F. DAVIS, Judge.

Action by J. L. Haley, Jr., against the Fireman's Fund Insurance Company. Judgment for plaintiff, and the defendant appeals. Affirmed, with *remittitur*.

*E. L. Mounger,* for appellant.

The demurrer admits that the collision resulted from a violation of the criminal statute of the state, and, if so, Haley is not entitled to recover. This avoided the policy. As the demurred admitted the violation of the

criminal statutes, and as the demurrer was sustained, the defendant was not called on, and was not permitted, to prove this. This was a good defense, and the sustaining of the demurrer to this plea was fatal error. Ann. Cas. 1912D, page 910; *Carter* v. *Ætna L. Ins. Co.,* 76 Kan. 275, 91 Pac. 178, 11 L. R. A. (N. S.) 1155.

The demurrers to these pleas should have been overruled. The third assignment of error is: That the court erred in overruling the demurrer of the defendant to the plaintiff's replication to the defendant's special pleas.

The second special plea of the defendant, sets out that the plaintiff was approaching or was actually traversing a bridge on a public highway at an unlawful rate of speed in violation of the ten-mile statute. The replication attempts to justify this unlawful rate of speed by setting up that the plaintiff did not see said bridge and did not know that he was approaching said bridge, being blinded by the lights of Heathman's car, but admits that he was going more than ten miles an hour in the night and continued to go at this rate, in spite of the fact that he was blinded by the lights from Heathman's car, on a road that he was unfamiliar with. This we submit was no reply and no defense or justification to the things charged in said second plea. He shows gross recklessness in such conduct according to his replication. This was a question of fact for the jury to pass on, and constituted a good defense. Under the statute Haley was charged with notice that there was a bridge there, or it could have been discovered by proper precautions under the circumstances. It was Haley's business and duty to take proper precautions to discover bridges on the road, and not go recklessly tearing along like a wild man from Borneo at an unlawful rate on a road with which he was not familiar, blinded so that he could not see in front of him. He did discover that there was a bridge there in a very short time afterwards. This plea constituted a good defense, and should have gone to the jury.

The tenth assignment of error is: Because the court erred in granting No. 3 for the plaintiff, record page 82. This instruction erred in fixing the amount of the verdict for the plaintiff with interest from the time of the accident. The amount instructed for exceeded the amount of the policy, and it was provided in the policy that in no event should the company be liable for more than the actual value of the property destroyed or the actual cost of repairs, and not more than the sum of one thousand dollars.

Interest should not have been charged from the date of the accident, because the company was allowed sixty days in which to settle, or said sum was payable sixty days after notice. Record page 9, line 82 of the policy. The amount should have been left to the determination of the jury.

*C. L. Lomax,* for appellee.

There were absolutely no exceptions in this policy which would protect the insurer under the facts in this case. When the company issued it, it knew that such accidents would happen, if they did not, there woud be absolutely no necessity for insurance of this kind. It could have placed in its policy the following: "There will be no liability on the part of this company if the assured in any way injures the property of another while violating any of the terms and conditions of any laws relating to the use of an automobile on the public highways." If it had placed this clause in the policy, there would have been no suit, because no policies would have been sold. There was no violation of the law, the party had been driving for sixteen years and never had an accident, therefore he must be a careful and skillful driver. No one ever recklessly and wilfully injures another. Haley was not guilty of any such conduct.

The basis of this suit is the following clause in the policy sued on, to-wit: "This policy also covers sums

which the assured shall become liable to pay for damages to property."

When Heathman sued Haley, and the insurance company took charge of the case, took charge of the wreck and all matters, then the judgment obtained by Heathman against Haley fixed the amount that the insurance company owed to Haley, not in excess, however, of one thousand dollars and interest from the date of the injury.

Where under policy insuring against loss by reason of the operation of the assured's automobile, an action brought by a person injured against the assured, and the insurance company thereupon takes sole charge of the defense, to the exclusion of the assured, as it had a right to do under the policy, a judgment in the action against the assured becomes, as between plaintiff and defendant and the company, a liability or debt owing unconditionally by the company to the assured, which such plaintiff may reach by garnishment. 48 L. R. A. (N. S.), page 104.

The above described policy also contained several provisions relating to its liability, among others:—(1) That it insured against all liability on account of fatal or nonfatal injuries suffered by an employee; (2) that the company at its own expense, would take upon itself the settlement of any loss and the control of any legal proceedings taken against the insured to enforce a claim for injuries to the assured's employee; (3) that the assured should not settle with the injured employee without the consent of the insurance company; (4) that no action should be brought against the insurance company after the period in which an action might be brought by the employee against the employer, unless at such period there was a suit pending for such purpose, in which case an action might be brought, in respect to the claim involved in such suit, against the company by the assured, within thirty days after judgment is rendered in such suit and not later.

*Held* that this policy, by the terms of the instrument itself, was not merely one of indemnity against any act of the employee but that in case of an accident to him whereby he had a cause of action against the assured, the company would assume and pay the liability. *Held,* further, that the employee having, while employed, sustained an injury whereby he recovered a judgment therefor against the employer for the sum of two thousand two hundred and eighty-five dollars and two cents the insurance company was liable therefor upon an action against it, without the employer having first paid the judgment. L. R. A. 30, page 690.

This language used in the insurance policy is that of the company in the instrument which it makes and issues; and where it expresses itself in terms of its own creation and if it needs any interpretation or construction, it certainly cannot complain if the meaning is resolved against it. The cases are numerous which sustain this position. In the case of *Anderson* v. *Fitzgerald,* 4 H L. Cas. 484, 510, it is said: "A policy ought to be so framed that he who runs may read. It ought to be framed with such deliberate care that no form of expression by which, on the one hand, the assured can be caught, or by which on the other the company can be cheated, shall be bound on the face of it. L. R. A. Book 30, page 691, see pages 699, 700, same report, 48 L. R. A. page 772.

Plaintiff may recover upon this policy under the authority of the case cited without showing an actual loss. It is sufficient if he shows that a liability has become legally fixed. 97 N. E. page 1028.

It has been held that an indemnity policy issued to a taxicab company covering a loss sustained from an accident arising out of a violation of a speed ordinance is not void as against public policy. *Taxicab Motarlear Co.* v. *Pacific Casaulty Co.,* 73 Wash. 631. 175 N. Y. Supp. 169; Third Ed. Berry on Automobiles, page 1474. The plaintiff held a policy of indemnity issued by the defendant whereby the latter agreed to indemnify him against

loss sustained by him on account of bodily injuries accidentally sustained by others by reason of his ownership and maintenance of a certain automobile. The policy stipulated that: "This agreement shall not apply while any such automobile is driven or manipulated by any person under the age fixed by law or under the age of sixteen years in any event. While the automobile was being driven by plaintiff's son in plaintiff's business, an accident occurred resulting in injury to another boy, causing his death, for which plaintiff was compelled to pay damages. The plaintiff's son was not licensed to operate an automobile and was not accompanied by a licensed operator. A statute of the state prohibited unlicensed persons from operating automobiles on the highways, and prohibited the issuance of a license for that purpose until the secretary is satisfied that the applicant is over seventeen years of age and is a proper person to receive it, and that, nothing herein shall prevent the operation of a motor vehicle by an unlicensed person seventeen years of age or more, if accompanied by a licensed operator. *Held* that the insured could recover, as the provisions of the statute requiring that an unlicensed person must be accompanied by a licensed operator had no reference to the age of the person operating the car. In this respect the court said: "The provisions of the statute, that an unlicensed person operating a car must be accompanied by a licensed operator, has no relation to the age of the operator. It applies to a man of seventy as well as the boy of seventeen. Neither may operate the car unless so accompanied; either may, although unlicensed, operate it. If the operator is not so accompanied, the law in each case is violated, not because the operator is under the age fixed by law for operating the car, but because of his non-compliance with the other provisions of the statute. The provisions of the policy upon which the defendant relies, except from the coverage of the policy cases where the operator may be duly licensed and above the age fixed by law but under the

age of sixteen fixed by the defendant, as well as cases where he may be above the age·fixed by the defendant and under that which is fixed by law. It raises these two questions; first, was the operator under sixteen years of age? if, so, the case is not covered by the policy although the law of the state may permit a person under that age to operate a car and receive a license to do so; second, if above the age of sixteen years fixed by the defendant, was the operator under the age fixed by law; if so, the case is not covered by the policy. The provisions relate solely to the question of age, and not at all to the question whether the operator has complied with the requirements of law. The defendant's construction makes liability depend upon the question whether a licensed operator accompanied the plaintiff's son at the time of the accident and not upon the question of age. But the proviso does not attempt to excuse the defendant from liability for losses incurred by the operation of the automombile contrary to the provisions of the statute.

The manifest purpose was to excuse from liability only in case the operator was too young, either in the opinion of the defendant or under the terms of the statute to operate a motor vehicle upon the public highways. In both the above cases the car was being operated contrary to the statute made and provided, yet as the insurance company had no provision in its policy against such unlawful operations, the courts decided against them, and I think properly so.

My contention being that as there was no clause in the policy prohibiting recovery for accidents cause by violation of road laws, that the company cannot read into its policy a defense which it did not place in its policies. The above cases sustain my contention. There is absolutely no proof of a willful and intentional injury, but the injury was accidental and fully protected by the policy. I respectfully submit that the case should be affirmed.

SYKES, J., delivered the opinion of the court.

The appellee sued and recovered a judgment against the appellant insurance company for one thousand dollars and interest from April 15, 1918, at six per cent., making the total amount of the judgment one thousand, one hundred and ninety dollars from which judgment this appeal is here prosecuted. The insurance policy in this case, among other things, "covers sums which the assured shall become liable to pay for damage to property . . . through collision of the automobile herein described with any other automobile. . . . This company shall not in any event be liable under this provision for more than the actual value of the property destroyed . . . or for a greater sum than one thousand ($1,-000) dollars . . . on account of any collision." The policy also provides how proof of loss shall be made out, and then provides "and the sum for which this company is liable, pursuant to this policy, shall be payable, sixty days after the notice. .. . . ."

The declaration charges and the testimony shows that on April 15, 1918, while appellee was driving on a country road at a rate of speed testified to by him and his witnesses to be about twenty-five miles an hour and estimated by some others as exceeding this limit, either as he was starting over or just before reaching a bridge, his car collided with the car of Mr. Heathman, practically destroying the Heathman car; that immediately thereafter he gave the proper notice in accordance with this policy to the insurance company of the collision; that some time thereafter Mr. Heathman sued him for five thousand dollars actual and punitory damages and recovered a judgment against him for one thousand dollars; that in the trial of this case his attorney was assisted in the defense by the attorney of the insurance company. There were various and sundry special pleas filed to this declaration by the insurance company which it is unnecessary to set out in detail. The statutes of

this state made it unlawful to exceed thirty miles an hour upon a country road (section 5775, Hemingway's Code), and to go upon or approach a bridge at a rate exceeding ten miles an hour. In this case the court instructed the jury on behalf of the defendant that, if the defendant was exceeding the speed of thirty miles an hour, they must find for the defendant, but declined to instruct the jury that, if he was approaching the bridge at a rate of speed of over ten miles an hour, they should find for the defendant. We think the instructions for the defendant were more liberal than it was entitled to under the law. Even if the plaintiff were exceeding either the thirty or the ten-mile speed statute in this case, and thereby violating both of these statutes, this would not prevent him from recovering upon this policy. There is no provision in the policy providing for non-liability in case at the time of an accident the insured is violating the speed laws of the state. It is "hornbook" law that these insurance policies which are prepared by the insurance companies are to be most strongly construed against them and in favor of the assured, and, where there is no provision in them exempting it from liability, the mere fact that these statutes may have been violated is no defense.

There is no contention in this case that the appellee deliberately ran into the car of Mr. Heathman.

There is nothing in the terms of the policy contrary to or violative of any public policy of the state. It is a perfectly valid contract of insurance and does not exempt the company from liability for a violation of the speed laws. It is a contract of absolute liability in cases of collision. The company sets up as a defense an independent collateral matter, viz. the violation of the speed law. Upon this question we think the case of *Messersmith* v. *American Fidelity Co.*, 187 App. Div. 35, 175 N. Y. Supp. 169, announces the correct principle of law. In that case the insured was violating the law by having an infant

drive his car at the time of the collision. The court, in holding the company liable, in part said:

"Here the contract on its face is perfectly legal. It does not purport to indemnify the plaintiff against damages growing out of the performance of an illegal act. . . . The plaintiff in this case, to make out his cause of action, was not required to prove any unlawful act. In fact, all of the material allegations of the complaint are admitted, and the defendant seeks to escape the liability which the policy places upon it by an independent, affirmative defense to the effect that at the time of the accident the automobile was being driven by a boy under eighteen years of age in violation of law.

" 'An obligation will be enforced, though indirectly connected with an illegal transaction, if it is supported by an independent consideration, so that the plaintiff does not require the aid of the illegal transaction to make out his case.' . . .

"It seems to me that there is an attempt in this case to connect distinct and independent transactions, and to inject into the insurance contract, which was fair and legal in itself, the illegal feature of the other independent transaction.

"The independent legal contract of insurance, founded upon a good and valid consideration, was not made void by an incidental violation of the Highway Law. The violation of the statute was an entirely distinct and dis-connected act. The issuing of the policy and the violation of the Highway Law were in no way connected. The issuing of the policy did not lead to the violation of the Highway Law in any way, it was not intended to aid or encourage such violation of the law. . . .

If such a defense were permissible in this state, automobile insurance would be practically valueless.

It is also contended by the appellants that the court should not have permitted the introduction of the judgment in the Heathman case. This policy, however, expressly covers "damages which the insured shall become

liable to pay. . . . '' This Heathman judgment was for damages which the appellee became liable to pay by virtue of the judgment. We know no better way to prove a liability than by introducing the judgment showing it.

It was also contended that the suit was for actual and punitory damages, and that it cannot be said that the judgment for one thousand dollars was only for the actual damages. Upon this question, however, it will be borne in mind that the amount sued for was five thousand dollars, the amount of the recovery was one thousand dollars and the uncontradicted testimony showed that the Heathman car was a total wreck, was practically a new car, having been driven only from two thousand to three thousand miles, costing originally one thousand, five hundred dollars. There was no testimony whatever controverting this proposition. Consequently the jury were inescapably driven to the conclusion that the one thousand dollars was only for actual damages. It was error, however, in this case to allow interest from the date of the collision. As will be noted from the terms of the policy above set out, the insurance company is allowed sixty days after the proof of loss within which to pay this claim. The collision occurred at night. The testimony shows that notice was immediately given the company. We conclude from this that notice was given the next day, April 16, 1918. The company then had sixty days, or to June 16, 1918, to pay this one thousand dollars. It was not in default until the expiration of the sixty days, and therefore is not liable for interest before June 16, 1918. In other words, the judgment of the lower court is excessive to the amount of two months' interest on one thousand dollars at six per cent. per annum, which amounts to ten dollars. Which judgment will be corrected in this court.

*Affirmed, with remittitur.*