7 N.Y.2d 465 (1960)
Fred McConnell, Respondent,
v.
Commonwealth Pictures Corporation, Appellant.
Court of Appeals of the State of New York.
Argued January 20, 1960.
Decided March 31, 1960.
Saul E. Rogers and Sol Ringel for appellant.
Bernard D. Bergreen, Morris H. Bergreen and Charles W. Silver for respondent.
Judges DYE, FULD, BURKE and FOSTER concur with Chief Judge DESMOND; Judge FROESSEL dissents in an opinion in which Judge VAN VOORHIS concurs in a separate memorandum.
*468 DESMOND, Ch. J.
The appeal is by defendant from so much of an Appellate Division, First Department, order as affirmed that part of a Special Term order which struck out two defenses in the answer.
Plaintiff sues for an accounting. Defendant had agreed in writing that, if plaintiff should succeed in negotiating a contract with a motion-picture producer whereby defendant would get the distribution rights for certain motion pictures, defendant would pay plaintiff $10,000 on execution of the contract between defendant and the producer, and would thereafter pay plaintiff a stated percentage of defendant's gross receipts from distribution of the pictures. Plaintiff negotiated the distribution rights for defendant and defendant paid plaintiff the promised $10,000 but later refused to pay him the commissions or to give him an accounting of profits.
Defendant's answer contains, besides certain denials and counterclaims not now before us, two affirmative defenses the sufficiency of which we must decide. In these defenses it is asserted that plaintiff, without the knowledge of defendant or of the producer, procured the distribution rights by bribing a representative of the producer and that plaintiff agreed to pay and did pay to that representative as a bribe the $10,000 which *469 defendant paid plaintiff. The courts below (despite a strong dissent in the Appellate Division) held that the defenses were insufficient to defeat plaintiff's suit. Special Term's opinion said that, since the agreement sued upon  between plaintiff and defendant  was not in itself illegal, plaintiff's right to be paid for performing it could not be defeated by a showing that he had misconducted himself in carrying it out. The court found a substantial difference between this and the performance of an illegal contract. We take a different view. Proper and consistent application of a prime and long-settled public policy closes the doors of our courts to those who sue to collect the rewards of corruption.
New York's policy has been frequently and emphatically announced in the decisions. "`It is the settled law of this State (and probably of every other State) that a party to an illegal contract cannot ask a court of law to help him carry out his illegal object, nor can such a person plead or prove in any court a case in which he, as a basis for his claim, must show forth his illegal purpose' (Stone v. Freeman, 298 N.Y. 268, 271, citing the leading cases). The money plaintiff sues for was the fruit of an admitted crime and `no court should be required to serve as paymaster of the wages of crime' (Stone v. Freeman, supra, p. 271). And it makes no difference that defendant has no title to the money since the court's concern `is not with the position of the defendant' but with the question of whether `a recovery by the plaintiff should be denied for the sake of public interests', a question which is one `of public policy in the administration of the law' (Flegenheimer v. Brogan, 284 N.Y. 268, 272). That public policy is the one described in Riggs v. Palmer (115 N.Y. 506, 511-512): `No one shall be permitted to profit by his own fraud, or to take advantage of his own wrong, or to found any claim upon his own iniquity, or to acquire property by his own crime. These maxims are dictated by public policy, have their foundation in universal law administered in all civilized countries, and have nowhere been superseded by statutes'" (Carr v. Hoy, 2 N Y 2d 185, 187).
We must either repudiate those statements of public policy or uphold these challenged defenses. It is true that some of the leading decisions (Oscanyan v. Arms Co., 103 U. S. 261; Stone v. Freeman, 298 N.Y. 268) were in suits on intrinsically illegal *470 contracts but the rule fails of its purpose unless it covers a case like the one at bar. Here, as in Stone v. Freeman and Carr v. Hoy (supra), the money sued for was (assuming the truth of the defenses) "the fruit of a crime." To allow this plaintiff to collect his commissions would be to let him "profit by his own fraud, or to take advantage of his own wrong, or to found [a] claim upon his own iniquity, or to acquire property by his own crime" (Riggs v. Palmer, 115 N.Y. 506, 511). The issue is not whether the acts alleged in the defenses would constitute the crime of commercial bribery under section 439 of the Penal Law although it appears that they would. "A seller cannot recover the price of goods sold where he has paid a commission to an agent of the purchaser (Sirkin v. Fourteenth Street Store, 124 App. Div. 384); neither could the agent recover the commission, even at common law and before the enactment of section 384-r of the Penal Law (now § 439)" (Judge CRANE in Reiner v. North American Newspaper Alliance, 259 N.Y. 250, 261). The Sirkin opinion (124 App. Div. 384) has been cited with approval by this court in Merchants' Line v. Baltimore & Ohio R. R. Co. (222 N.Y. 344, 347) and Morgan Munitions Supply Co. v. Studebaker Corp. (226 N.Y. 94, 99). In unmistakable terms it forbids the courts to honor claims founded on commercial bribery.
We are not working here with narrow questions of technical law. We are applying fundamental concepts of morality and fair dealing not to be weakened by exceptions. So far as precedent is necessary, we can rely on Sirkin v. Fourteenth St. Store (124 App. Div. 384, supra) and Reiner v. North American Newspaper Alliance (259 N.Y. 250, supra). Sirkin is the case closest to ours and shows that, whatever be the law in other jurisdictions, we in New York deny awards for the corrupt performance of contracts even though in essence the contracts are not illegal. Sirkin had sued for the price of goods sold and delivered to defendant. Held to be good was a defense which charged that plaintiff seller had paid a secret commission to an agent of defendant purchaser. There cannot be any difference in principle between that situation and the present one where plaintiff (it is alleged) contracted to buy motion-picture rights for defendant but performed his covenant only by bribing the seller's agent. In the Reiner case (supra), likewise, the plaintiff had fully performed the services required by his agreement with *471 the defendant but was denied a recovery because his performance had involved and included "fraud and deception" practiced not on defendant but on a third party. It is beside the point that the present plaintiff on the trial might be able to prove a prima facie case without the bribery being exposed. On the whole case (again assuming that the defenses speak the truth) the disclosed situation would be within the rule of our precedents forbidding court assistance to bribers.
It is argued that a reversal here means that the doing of any small illegality in the performance of an otherwise lawful contract will deprive the doer of all rights, with the result that the other party will get a windfall and there will be great injustice. Our ruling does not go as far as that. It is not every minor wrongdoing in the course of contract performance that will insulate the other party from liability for work done or goods furnished. There must at least be a direct connection between the illegal transaction and the obligation sued upon. Connection is a matter of degree. Some illegalities are merely incidental to the contract sued on (see Messersmith v. American Fid. Co., 187 App. Div. 35, affd. 232 N.Y. 161; De Persia v. Merchants Mut. Cas. Co., 268 App. Div. 176, affd. 294 N.Y. 708; Ferkin v. Board of Educ., 278 N.Y. 263, 268). We cannot now, any more than in our past decisions, announce what will be the results of all the kinds of corruption, minor and major, essential and peripheral. All we are doing here is labeling the conduct described in these defenses as gross corruption depriving plaintiff of all right of access to the courts of New York State. Consistent with public morality and settled public policy, we hold that a party will be denied recovery even on a contract valid on its face, if it appears that he has resorted to gravely immoral and illegal conduct in accomplishing its performance.
Perhaps this application of the principle represents a distinct step beyond Sirkin and Reiner (supra) in the sense that we are here barring recovery under a contract which in itself is entirely legal. But if this be an extension, public policy supports it. We point out that our holding is limited to cases in which the illegal performance of a contract originally valid takes the form of commercial bribery or similar conduct and in which the illegality is central to or a dominant part of the plaintiff's whole course of conduct in performance of the contract.
*472 There is no pertinence here of the rule which makes such defenses unavailable to one who is a mere depository or escrowee  that is, one who is holding money or goods for one of the parties without himself being a party to the transaction sued upon (see Southwestern Shipping Corp. v. National City Bank of N. Y., 6 N Y 2d 454). That exception is used when, in execution or satisfaction of an illegal transaction, one of the parties thereto turns over money or property to a third person (not a party to the illegal deal) for the use of one who is a party. In our case there were two parties only  plaintiff and defendant. There is no third person holding money or property.
The sufficiency of defendant's counterclaim (for the return of its $10,000) was litigated below but it is not before us on this appeal.
The order appealed from should be reversed, with costs, the certified question answered in the negative, and plaintiff's motion, insofar as it attacks the sufficiency of the two separate defenses, should be denied.
FROESSEL, J. (dissenting).
Plaintiff sues for an accounting and related relief under a clearly lawful contract, whereby defendant agreed to make certain payments in connection with plaintiff's negotiation, on behalf of defendant, of an agreement with Universal Pictures Company, Inc., for distribution rights with respect to 40 western feature films and 4 serial motion pictures. The payments agreed upon were $10,000 upon the execution of a contract with Universal, and 20% of all the gross receipts received by defendant from the distribution of said pictures after defendant had recouped the amount of $100,000 from 60% of the gross receipts. Upon negotiation of the distribution rights, defendant paid plaintiff said sum of $10,000, but thereafter declined upon demand to pay plaintiff any further moneys.
Two defenses set forth in the answer were stricken below. The first defense alleged that plaintiff secured the Universal contract as a result of influencing an agent of Universal and United World Films, Inc., to cause United to execute the contract with defendant, for which he paid the agent $10,000, in claimed violation of section 439 of the Penal Law. The second defense reiterated the allegations of the first, and alleged that the enforcement of the contract would be contrary to public *473 policy. These allegations are denied, except of course as they are deemed admitted as a matter of law by challenging their legal sufficiency. It is to be noted that defendant does not charge that its own agent was bribed or that its contract with plaintiff contemplates any illegal act. Moreover, neither the answer nor the affidavit in opposition suggests that Universal or United has in anywise questioned the distribution contract or that defendant has not enjoyed the full fruits thereof.
The narrow question before us as framed by Special Term is "whether the unlawful acts imputed to the plaintiff in performance are fatal to recovery under a lawful contract". We agree with the courts below "that recovery for services under a valid agreement may be had, notwithstanding that the plaintiff has in the course of their rendition committed illegal acts". This was implicit in our holding in Chesebrough v. Conover (140 N.Y. 382) and it was so squarely held in Dunham v. Hastings Pavement Co. (56 App. Div. 244) where the court correctly stated the applicable rule of law as follows (pp. 251-252): "If the contract contemplated legal service and that alone, we do not think that it would be rendered illegal by the fact that the plaintiff did illegal acts in its performance. The question is and continues, was the contract in fact for the performance of illegal service. If it was not, then it is valid and can be enforced." (See, also, 57 App. Div. 426.)
This is not a case where the contract sued upon is intrinsically illegal (cf. Stone v. Freeman, 298 N.Y. 268; Reiner v. North American Newspaper Alliance, 259 N.Y. 250); or was procured by the commission of a crime (Sirkin v. Fourteenth St. Store, 124 App. Div. 384); or where a beneficiary under a will murdered his ancestor in order to obtain the speedy enjoyment of his property (Riggs v. Palmer, 115 N.Y. 506). In the Sirkin case, so heavily relied upon by the majority, the plaintiff obtained the very contract he was seeking to enforce by paying secret commissions to defendant's own purchasing agent. In Merchants' Line v. Baltimore & Ohio R. R. Co. (222 N.Y. 344, 347) we pointed out that in Sirkin "the plaintiff reached and bribed the man who made the contract under which he was seeking to recover" (emphasis supplied). In Morgan Munitions Supply Co. v. Studebaker Corp. (226 N.Y. 94, 99) we likewise cited the Sirkin case for the proposition that "a contract procured by *474 the commission of a crime is unenforceable even if executed" (emphasis supplied).
In the instant case, the contract which plaintiff is seeking to enforce is perfectly valid, and it was not intended or even contemplated that plaintiff would perform the contract by illegal or corrupt means. Having received and retained the full benefits of plaintiff's performance, defendant now seeks to "inject into" its contract with plaintiff, "which was fair and legal in itself, the illegal feature of the other independent transaction" (Messersmith v. American Fid. Co., 187 App. Div. 35, 37, affd. 232 N.Y. 161). This court is now adopting a rule that a party may retain the benefits of, but escape his obligations under, a wholly lawful contract if the other party commits some illegal act not contemplated nor necessary under the contract. By way of a single illustration, an owner may thus avoid paying his contractor for the cost of erecting a building because the contractor gave an inspector a sum of money to expedite an inspection.
The majority opinion seeks to distinguish between "major" and "minor" illegality and "direct" and "peripheral" corruption. It decides this case on the ground that the manner in which plaintiff performed his admittedly valid contract with defendant was "gravely immoral and illegal". Such distinctions are neither workable nor sanctioned by authority. If a contract was lawfully made, and did not contemplate wrongdoing, it is enforcible; if, on the other hand, it was procured by the commission of a crime, or was in fact for the performance of illegal services, it is not enforcible. These are the criteria distinguishing enforcible from unenforcible contracts  not "nice" distinctions between degrees of illegality and immorality in the performance of lawful contracts, or whether the illegal act of performance was "directly" or "peripherally" related to the main contract.
Moreover, a reversal here would be contrary to the spirit, if not the letter, of our holding in Southwestern Shipping Corp. v. National City Bank (6 N Y 2d 454). The broad proposition for which that case stands is that a party unconnected with an illegal agreement should not be permitted to reap a windfall by pleading the illegality of that agreement, to which he was a stranger. There, the contract between the plaintiff and the bank was *475 entirely lawful, and the bank attempted to avoid the consequences of its breach of contract and negligence by asserting the illegality of a different contract between plaintiff and a third party. Here, the contract between plaintiff and defendant was perfectly legal, and defendant is seeking to avoid its obligations under the contract  of which it has reaped the benefits for some 12 years  by asserting the illegality of a different and subsequent agreement between plaintiff and a third party. This it should not be permitted to do.
The order appealed from should be affirmed, with costs, and the question certified answered in the affirmative.
VAN VOORHIS, J. (dissenting).
Public morals and fair dealing are likely to be advanced by limiting rather than by enlarging the rule that is being extended to the facts of this case. This rule is grounded on considerations of public policy. Courts will not intervene between thieves to compel them to divide the spoils. But in a situation like the present, it seems to me that the effect of this decision will not be to restrain the corrupt influencing of agents, employees or servants but to encourage misappropriation of funds and breaches of faith between persons who do not stand in corrupt relationships with one another. The public interest is not served best by decisions which put a premium on taking unconscionable advantage of such situations, or which drive the enforcement of obligations of this kind underground. I concur in the dissenting opinion by Judge FROESSEL.
Order reversed, with costs in all courts, and matter remitted to the Appellate Division for further proceedings in accordance with the opinion herein. Question certified answered in the negative.