[Civ. No. 3930. Third Appellate District.—April 17, 1930.]

NICOLA F. FAGIANI, Respondent, v. GENERAL ACCI-
DENT, FIRE AND LIFE ASSURANCE CORPORA-
TION, LTD., Appellant.

Redman, Alexander & Bacon for Appellant.

Clarence N. Riggins for Respondent.

FINCH, P. J.—The plaintiff is the father of Anita
Fagiani, a minor, who was struck and injured by an auto-
mobile owned by W. A. Bennett and driven at the time of
the accident by his wife, Celeste Bennett. Based upon such
injuries the plaintiff recovered judgment for damages
against Celeste Bennett. Thereafter this action was com-
menced to recover the amount of said judgment from the
defendant herein, under the terms of a policy of liability
insurance issued by the defendant to W. A. Bennett. Judg-
ment was entered in favor of the plaintiff and the defend-
ant has appealed.

The policy contains the following provisions:

"Additional Assureds. The insurance provided by this policy is so extended as to be available, in the same manner and under the same provisions as it is available to the named assured, to any person or persons while riding in or legally operating any of the automobiles described in the declarations or to any person, firm or corporation legally responsible for the operation thereof, provided such use or operation is with the permission of the named assured, or if the named assured is an individual, with the permission of an adult member of the named assured's household other than a chauffeur or a domestic servant. . . .

"Exclusions. . . . This policy does not cover while any automobile insured hereunder is being (4) used for any purpose other than specified in declaration No. 9, (5) driven or manipulated by any person in violation of law as to age, and if there is no legal age limit, then under the age of 16 years, (6) driven or manipulated in any race or contest, (7) used for towing or propelling any trailer or any other vehicle used as a trailer, (8) rented or hired to others or being used to carry passengers for a consideration."

The answer alleges that "Celeste Bennett was not legally operating the automobile referred to at the time of the alleged accident." It was stipulated at the trial that she did not have an operator's license at the time of the accident or prior thereto. She was driving the automobile with the express permission of W. A. Bennett.

The only question presented by appellant is whether Celeste Bennett was "legally operating" the automobile within the meaning of the quoted words as used in the policy, she not having been licensed to drive any automobile. Under a liberal definition of the term, one is not "legally operating" an automobile when he is driving it in violation of any provision of law, but obviously the term was not used in that broad sense in the policy in question, because to give it that meaning would be to destroy the protection which the policy purports to give to persons driving the automobile with the permission of the owner. It is a matter of common knowledge that nearly every automobile accident is due to a breach of some statutory provision. In *Firemen's Fund Ins. Co.* v. *Haley,* 129 Miss. 525 [23 A. L. R. 1470, 92 South. 635], it is said that, where there is nothing in the policy exempting the insurance company from liabil-

ity because of the violation of the highway laws, "if such a defense were permissible in this state, automobile insurance would be practically valueless." In *Messersmith* v. *American Fidelity Co.*, 232 N. Y. 161 [19 A. L. R. 876, 133 N. E. 432], Cardozo, J., delivering the opinion of the court, said: "To restrict insurance to cases where liability is incurred without fault of the insured would reduce indemnity to a shadow. . . . Liability of the owner, who is also the operator, can never be incurred without fault that is personal. Indeed, the statute has so covered the field that it can seldom, if ever, be incurred without fault that is also crime."

The foregoing considerations are to be kept in mind in construing the uncertain terms of a policy under which the insurer claims exemption from liability. "Legally operating" an automobile, in common parlance, relates to the manner of its operation rather than to authorization to operate it, although, as stated, in a broader sense the term may include both. It is not to be presumed that by the provision of the policy in question it was intended to give a mere shadow of protection to persons driving the automobile with permission of the owner. That it was not so intended is indicated by other provisions of the policy. Under the terms thereof the defendant could not escape liability to the owner on the mere ground that he was driving the automobile at the time of the accident without an operator's license, or that it was driven, with the owner's knowledge, by his unlicensed agent, or liability to any other person "legally responsible for the operation thereof" while it was driven by such person's unlicensed agent. If the automobile had been driven at the time of the accident by an unlicensed agent of Celeste Bennett, she knowing him to be unlicensed, the defendant would be liable to her in the same manner as if such agent had been duly licensed.

If it was the intention to exempt the defendant from liability under circumstances such as are involved herein, one would naturally expect such exemption to be included in the express statement of "Exclusions." All of such exclusions are made applicable alike to the "named assured" and the "additional assureds" and no reason appears for requiring an operator's license as a condition of liability to one assured and not to the others. Undoubtedly an in-

surer might make such a distinction in its policy of insurance, but the fact that there is no apparent reason for the distinction may be considered in determining the meaning of an uncertain term of the policy. It is not necessary to determine what was intended by the use of the term "legally operating," but it is sufficient to show that it is uncertain whether it was the intention of the parties to the contract to give it the meaning for which appellant contends.

"A policy of insurance is but a contract, and like all other contracts it must be construed according to the language and terms used therein in order to arrive at its true sense and meaning. Courts will not undertake to relieve parties from the express and plain stipulations into which they have entered. But while this is true, it is also a rule well established by the courts, that provisos and exceptions contained in a policy of insurance must be strictly construed against the insurer and liberally in favor of the insured. This rule is based upon the fact that the contract of insurance is drawn by the insurer, and in it are usually placed many exceptions, conditions and forfeitures deliberately and purposely by the insurer so as to avoid liability, and the ordinary person in paying a premium and accepting a policy does not read, or, if he does read, he cannot understand the many conditions, exemptions and exceptions contained therein. In fact such provisions, exceptions and conditions in many cases, on account of their ambiguity, have been construed differently by the most eminent lawyers, and the highest courts of the land. Therefore, the courts endeavor to carry out the contracts as made by the parties and, at the same time, prevent if possible the exceptions and conditions from wholly devouring the policy. It is therefore a fundamental rule that the insurer is in duty bound to use such language as to make the conditions, exceptions and provisions of the policy clear to the ordinary mind, and in case it fails to do so, any ambiguity or reasonable doubt must be resolved in favor of the insured and against the insurer." (*Pacific etc. Co.* v. *Williamsburgh City Fire Ins. Co.,* 158 Cal. 367, 369 [111 Pac. 4, 5].)

The judgment is affirmed.

Plummer, J., and Thompson (R. L.), J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on May 17, 1930, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 16, 1930.