## U–DRIVE–IT CAR CO., Inc., v. FREIDMAN et al.
### No. 14629.

Court of Appeal of Louisiana. Orleans.
March 12, 1934.

Edward Rightor and W. H. Sellers, both of New Orleans, for appellant.

Stephen C. Hartel and John J. Kenny, both of New Orleans, for appellee.

JANVIER, Judge.

Plaintiff is a corporation engaged in the business of hiring out automobiles to persons who desire to, themselves, operate the said cars. General Accident, Fire & Life Assurance Corporation, Limited, is an incorporated concern engaged in the writing of various kinds of insurance policies. In the course of its business it issued to E. H. Walsdorf, Sr., a policy of public liability and property damage insurance under which it undertook to hold harmless the said Walsdorf against liability for damage caused by a certain Packard automobile owned by him and operated by him or in his interest.

The said policy contained a clause in which the insurer agreed to afford similar protection to any one legally operating the said Packard car, even though not in the interest of or on behalf of the said owner.

Plaintiff hired out one of its Chevrolet Automobiles to a certain Victor Malazza, and Walsdorf loaned his Packard to Max Freidman, and the two automobiles were in collision under circumstances which, it is admitted, were attributable solely to fault on the part of Freidman, the operator of the Packard.

Plaintiff seeks to recover directly from the insurance company for the damage caused to the Chevrolet. It is conceded that the amount claimed represents a fair estimate of the damage which was sustained. The suit is brought directly against the insurer of Walsdorf under the provisions of Act No. 55 of 1930, in which statute it is provided that whenever in this state there is issued a policy of liability insurance "the injured person or his or her heirs * * * shall have a right of direct action against the insurer company within the terms, and limits of the policy. * * *" Section 2.

We are not concerned with the claim against Freidman, who was operating the Packard, but find presented only the legal question of liability vel non of the insurer, which liability is denied on two grounds.

The insurer first contends that there is no liability because under the terms of the policy it is liable for damage caused while the automobile is being operated otherwise than by or on behalf of the owner, only if it is being "legally" operated, and it is argued that on the occasion in question it was not being legally operated since the record shows that Freidman, who was driving it, was intoxicated, and since to drive an automobile while intoxicated is a violation of a criminal law of this state, and is therefore illegal.

As a second defense the insurer asserts that it is relieved from liability by reason of the fact that shortly after the accident Freidman signed and swore to an affidavit in which he admitted that he was solely to blame for the accident, thus, so it is contended, releasing the insurer from liability, because, by so doing, Freidman violated those clauses in the policy which, after first declaring that the word "assured" as used in the policy "shall include in each instance the named assured and any other person, firm or corporation entitled to insurance under the provisions and conditions of this policy," further provided that "the assured shall at all times render to the corporation all co-operation within his power," and "shall not voluntarily assume any liability * * * without the consent of the corporation previously given in writing."

We do not find raised any question as to the right of a plaintiff, who receives no personal injuries and who seeks recovery only for damage caused to his property, to proceed directly against the insurer of the person responsible for the damage, and, in the absence of any contention on this point, we assume that defendant concedes that Act No. 55 of 1930 gives this right.

In the court, a qua, there was judgment for plaintiff for $300 as prayed for with legal interest from judicial demand. Defendant has appealed.

 It is true that the policy provisions extend protection to any other person than the owner only while such other person is "legally" operating the automobile which is the subject of the insurance, and it is also true that in one sense a person who, while intoxicated, drives an automobile, is not operating it legally, but the word "legally," as used, manifestly applies, not to the manner of operation, but rather to the right to use.

If the clause in question means that protection is afforded to a third person only so long as everything done by the third person who is operating the car is legal, then the protection is practically valueless, because, so long as an automobile is operated properly and legally, no tort liability can result.

It is illegal to so operate a car as to negligently cause damage. If, then, damage is negligently caused, the operation must have been illegal. If the operation was illegal, then, so defendant contends, there was no insurance protection. No protection is needed at any other time.

That the interpretation contended for by defendant cannot be placed upon the clause in question becomes evident when we focus our attention on the word "same" as it appears twice in the clause in question. It is provided that the protection afforded to a third person legally operating the car shall be "available in the same manner and under the same provisions as it is available to the named assured." There can be no question that the protection is afforded to the named assured regardless of whether the car is operated legally or illegally. If, then, the "same" protection under the "same" provisions is afforded to the third person, manifestly, it is available regardless of the negligent or illegal manner of operation, provided only that the third person shall have legally, that is to say, with the owner's permission, come into possession of the car.

Similar clauses have been frequently considered, and, in cases to which our attention has been directed, it has been held that the policy affords protection if the person using the automobile obtained possession with the consent of the owner and was thus operating it by right of lawful authority. Zurich General Accident & Liability Insurance Company v. Thompson (C. C. A.) 49 F.(2d) 860; Kautz v. Zurich General Accident & Liability Insurance Co., 212 Cal. 576, 300 P. 34; Messersmith v. American Fidelity Company, 232 N. Y. 161, 133 N. E. 432, 19 A. L. R. 876; Todd v. Traders' & Mechanics' Insurance Co., 230 Mass. 595, 120 N. E. 142; Cluff v. Mutual Benefit Life Ins. Co., 13 Allen (Mass.) 308; 17 A. L. R. 1005, note; Fagiani v. General Accident Fire & Life Assurance Corporation, 105 Cal. App. 274, 287 P. 377.

 We next consider the second defense, which is that there is no liability because, by executing a statement to the effect that the accident resulted from his fault, Freidman thus automatically discharged the insurer company from the liability which would otherwise have been placed upon it.

We first direct attention to the fact that

Freidman, who signed the statement which gives rise to this defense, did not in the said statement "assume any liability." He merely admitted fault on his part. While it is true that he set forth in the statement that it was made "solely for the purpose of determining the civil liability for the accident," he did not assume such liability.

We shall, however, for the moment, treat the statement as an unequivocal assumption of liability on the part of Freidman.

Since, under Act No. 55 of 1930, there is created in an injured party a right of direct action against the insurer of the party responsible for the damage, then the enforcement of the policy provision requiring the co-operation of the insured and prohibiting the assumption by the insured of liability automatically and without any action on the part of the injured party deprives him of that right. It would seem that, if the interpretation placed upon the statute and upon the policy provision by defendant is the proper one, then the statute gives the right, but the policy permits the destruction of it without any action by the third person to whom the statute gives it.

It is argued that, even though this be true, nevertheless there is nothing illegal in the policy requirement that there be no assumption of liability and that there be co-operation by the assured, and it is further argued that, if the said requirement be legal, it is not repugnant to Act No. 55 of 1930, because that statute expressly provides "that nothing contained in this act shall be construed to affect the provisions of the policy contract if the same are not in violation of the laws of this State." Section 2.

Our view is that the policy provision in question could not be permitted to deprive a third person, who is injured or who sustained loss, of the right which the statute gives to proceed directly against the insurer or the assured or both, and that it is intended to deprive only the assured of his protection in the event that he fails to co-operate or in the event he assumes liability or jeopardizes the rights of the insurer. In other words, if the assured admits fault and agrees to assume liability, then he, if he is required to make payment to the injured party, cannot claim reimbursement from his insurer. If, however, the injured party makes claim directly against the insurer, his right to recover cannot be defeated by the admissions or assumptions of the assured and to which he, the injured person, is not a party.

In Edwards v. Fidelity & Casualty Company of New York, 11 La. App. 176, 123 So. 162, we considered a defense very similar to that presented here. There the act in question was Act No. 253 of 1918 which provided that in certain cases and "within the terms and limits of the policy" an injured third person might make claim against the insurer. The policy required that the insurer must receive notice of the accident. The insurer received no such notice, and interposed as a defense to the action of the third person the failure to receive notice. We said: "If the failure of Monahan to give the insurer notice of the accident operates to deprive plaintiff of such rights, as, under the statute and under the policy, he would otherwise have had, then the right, which the statute creates and which the policy recognizes, is of doubtful value, because the existence of that right in one person depends upon the actions of another."

While the act of 1918 is not involved here, nevertheless the same process of reasoning results in the conclusion that, if the right of recovery depends, under the policy, upon the refusal of the insured to admit fault, then the right of the injured party to recover, which is given by the statute, is of very doubtful value, because it may be entirely destroyed by the insured without any action or acquiescence on the part of the injured party.

We find in the Edwards Case another statement which we deem pertinent here. It concerns the effect of the violation of a policy stipulation as between the insurer and the assured. There we felt, as we have said, that the failure of the insurer to receive notice could not defeat the claim of the injured third party, but we also felt that, because of the failure to give the insurer notice of the accident, the assured might have been prevented from recovering back from the insurer any sum he might have been required to pay to the injured party. We may well repeat here what we said there: "As between parties to a contract, the contract itself is the law of the case. Here, however, the law of the case is not found solely within the four corners of the policy of insurance, but is contained primarily in the statute to which we have referred."

█ We now revert to the fact that the policy stipulation prohibits an assumption of liability; it does not by its terms prohibit an admission of fault. It may be said that this is a distinction without a difference. We do not think so. To assume liability is to con-

tract an obligation, whereas to admit fault is merely to admit the truth of a fact, from which fact liability may flow.

There is nothing abhorrent in an insurer requiring that its assured shall not contract away the right to defend threatened litigation and to prohibit the assured from thus rendering certain the liability of the insurer. An insurer has a right to defend an action and to attempt to prove that there is no liability. This it cannot do if liability has already been assumed by its assured.

But there is something contrary to our ideas as to what should be an established public-policy for an insurer to require from an assured that he, the assured, shall not make a statement about the facts of an accident in which he may be involved.

If it is contrary to public policy to prohibit the making of a statement, then surely it is contrary to public policy to require that, if a statement is made, it must be favorable under penalty of loss of insurance protection.

But in any event, even though such a policy provision may be effective as against a claim for reimbursement made by an assured, it cannot serve to defeat the rights of a third party.

Let us imagine for a moment the result to which such a clause if so interpreted may lead.

A is injured by B. A, without thinking of whether or not B is protected by insurance, says to B, "I think you were at fault." B truthfully answers, "Yes, I was at fault." A makes demand on B. B refers the matter to his insurer. The insurer, after investigating, finds that B was at fault, but that he has admitted his fault. The insurer, therefore, refuses to make payment because of B's statement admitting fault. We cannot lend ourselves to the bringing about of such a result.

Counsel call our attention to the fact that that portion of the act of 1930 which confers upon the injured party the right to a direct action against the insurer provides that the said right shall be governed by "the terms and limits of the policy," and they contend that the word "terms" is intended to include such stipulations as that requiring co-operation and prohibiting the assumption of liability. We feel that, though the act does, in fact, declare that the action shall be "within the terms * * * of the policy," it could not have been the intention of the Legislature that a condition of "term" of the policy, if repugnant to the letter or spirit of the stat-ute, should prevail over the statute, and such would often be the result if the interpretation contended for here should be adopted.

It must be conceded that there have been cases, some of which are cited by defendant, in which similar policy provisions have been permitted to deprive injured parties of rights which would otherwise have been afforded them by statutes similar to that involved here.

Some of these cases may be distinguished. As to the others we can only repeat what we said when, In Bougon v. Volunteers of America, 151 So. 797, 802, counsel for the defendant insurer criticized our views as set forth in Edwards v. Fidelity & Casualty Company of New York, supra, as being contrary to the weight of authority: "Just a word about the Edwards Case, which, we are informed, has met with considerable criticism, as distinguished an authority as the Supreme Court of California having declared that it is clearly against the great weight of authority. Hynding v. Home Acc. Ins. Co., 214 Cal. 743, 7 P.(2d) 999, 85 A. L. R. 13. We realize that the current of judicial authority is usually right, and therefore that we are probably wrong, but, if so, the mists of misunderstanding have not cleared, and we are still enveloped in the Plutonian darkness of error, for we arise from a reconsideration of that case with a new and more abiding faith in its correctness."

Those who may be interested are referred to the following cases which are cited by defendant as setting forth views contrary to ours: Hynding v. Home Accident Ins. Co., 214 Cal. 743, 7 P.(2d) 999, 85 A. L. R. 13; Metropolitan Casualty Ins. Co. of N. Y. v. Colthurst (C. C. A.) 36 F.(2d) 559; Peeler v. U. S. Casualty Co., 197 N. C. 286, 148 S. E. 261; Guerin v. Indemnity Ins. Co., 107 Conn. 649, 142 A. 268.

In the Peeler Case the suit was brought against both the insurer and the assured. The assured violated a policy provision, in that he failed to forward to the insurer the "suit papers." The court held that there could be no direct recovery by the insured party against the insurer. But it will be noticed that the injured party, by bringing direct action against the insured, evidenced a knowledge that there was an insurer. He therefore could have notified the insurer himself of the suit, and thus the fact that the policy requirement in this regard was not complied with resulted from the failure of the plaintiff himself to take the necessary

steps which he knew, or ought to have known, should be taken.

Those cases which hold that the failure of the assured to give to the insurer notice of an accident relieves the insurer of liability to an injured third person who may have no knowledge that there is insurance have been discussed by us in the Edwards Case, supra, and we adhere to the views expressed in that case.

In Guerin v. Indemnity Ins. Company, supra, the court, as we read the opinion, felt that failure to co-operate could not be said to result from the making of a truthful statement.

With the Hynding Case we are entirely unable to agree. There, in a suit by an injured party against an insurer, the assured failed to attend the trial. The court held that this failure constituted a refusal to co-operate and deprived the injured party of his right to obtain judgment in a direct action against the insurer. Such a result, it seems to us, denies to an injured party the rights given him under the statute.

For the reasons assigned, the judgment appealed from is affirmed.

Affirmed.