# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*Illinois State Bar Ass'n Mutual Insurance Co. v. Frank M. Greenfield & Associates, P.C.*,
**2012 IL App (1st) 110337**

---

| | |
|---|---|
| Appellate Court Caption | ILLINOIS STATE BAR ASSOCIATION MUTUAL INSURANCE COMPANY, Plaintiff-Appellant, v. FRANK M. GREENFIELD AND ASSOCIATES, P.C., an Illinois Professional Corporation, FRANK M. GREENFIELD, ORRIN ADLER, BARBARA ADLER, MICHAEL HANNA, and FAYE R. ADLER GRAFTON, Defendants-Appellees. |
| District & No. | First District, Sixth Division<br>Docket No. 1-11-0337 |
| Filed | November 9, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The voluntary payment clause in the legal malpractice policy plaintiff issued to defendant prohibiting defendant from admitting liability, making any payment or settling any claim without plaintiff's consent was unenforceable as against public policy and did not excuse plaintiff from defending a claim that defendant made a mistake in drafting a will. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-CH-12150; the Hon. Mary L. Mikva, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal

Robert Marc Chemers, Richard M. Burgland, and Scott L. Howie, all of Pretzel & Stouffer, Chtrd., of Chicago, for appellant.

Michael W. Rathsack, of Chicago, for appellees.

Panel

JUSTICE R. GORDON delivered the judgment of the court, with opinion.

Justice Hall concurred in the judgment and opinion.

Justice Garcia specially concurred, with opinion.

## OPINION

¶ 1    This appeal is essentially a case of first impression and concerns whether an admission of error in a legal malpractice claim by a policyholder without his insurance company's approval gave the company the right to deny coverage and not defend the attorney and his law firm. Attorney Frank M. Greenfield admitted to making a mistake in drafting a client's will that affected the distribution of funds from a trust established by his client. According to the letter, which was sent to all of the trust's beneficiaries, Greenfield's mistake resulted in several of the beneficiaries receiving less money than they otherwise would have received had the client's wishes been properly implemented. Those beneficiaries, defendants Orrin Adler, Barbara Adler, Michael Hanna, and Faye R. Adler Grafton (collectively, the underlying plaintiffs), filed suit against Greenfield and his firm, Frank M. Greenfield & Associates, P.C. (collectively, Greenfield), for legal malpractice.

¶ 2    Greenfield had a professional liability insurance policy through Illinois State Bar Association Mutual Insurance Company (ISBA Mutual), but did not inform ISBA Mutual prior to sending the letter to the beneficiaries. ISBA Mutual claims that, by failing to inform it of the letter prior to sending it, Greenfield violated a provision of his insurance policy and, consequently, ISBA Mutual had no duty to defend Greenfield in the subsequent legal malpractice action. ISBA Mutual filed an action for declaratory judgment, seeking an order that it had no duty to defend Greenfield. The prayer for relief in the declaratory action does not mention coverage; it only requested the trial court to find that it had no duty to defend as a result of Greenfield's admission letter to the beneficiaries of the trust. Both parties filed motions for summary judgment, and the trial court granted Greenfield's, finding that ISBA Mutual had a duty to defend since Greenfield did not admit to liability in the letter and consequently did not violate his insurance policy; the trial court also found that even if he had violated the policy, ISBA Mutual was not prejudiced by the breach. ISBA Mutual appeals, and we affirm.

¶ 3                                    BACKGROUND

¶ 4    The facts in the instant appeal are largely undisputed. On March 24, 2010, ISBA Mutual

filed a complaint for declaratory judgment, alleging that the law firm of Frank M. Greenfield & Associates, P.C., was the named insured on a professional liability insurance policy issued by ISBA Mutual, and Greenfield individually was an insured on that policy. The firm and Greenfield were named in a lawsuit initiated by the underlying plaintiffs, who sought compensatory damages for Greenfield's omission of a provision in a client's will, which allegedly damaged the underlying plaintiffs upon the client's death. The firm and Greenfield tendered their defense of the suit and ISBA Mutual accepted that tender, subject to a reservation of rights for the reasons underlying its complaint for declaratory judgment.

¶ 5    ISBA Mutual alleges that its insurance policy contains a provision entitled "Voluntary Payments," which provides:

> "The INSURED, except at its own cost, will not admit any liability, assume any obligation, incur any expense, make any payment, or settle any CLAIM, without the COMPANY'S prior written consent."

ISBA Mutual argues that it has no duty to defend the firm and Greenfield in connection with the underlying plaintiffs' complaint because Greenfield admitted liability in a letter dated June 17, 2008, and seeks a judgment finding the same.

¶ 6    Attached to the complaint was the plaintiffs' complaint in the underlying action. The complaint alleges that Greenfield represented Leonard and Muriel Perry for purposes of estate planning. Leonard executed a will that poured his assets into a trust known as the "Leonard W. Perry Declaration of Trust"; Muriel did the same, with her assets pouring into the "Muriel W. Perry Trust Agreement." From time to time, Leonard and Muriel amended their trusts, and in 1996, Leonard executed an amendment giving Muriel the power of appointment to make changes and modifications to the plan of distribution of the funds in his trust upon Leonard's death. After Leonard's death, in 2007, Greenfield amended Muriel's will to include language "that directed, pursuant to her Power of Appointment of the Leonard W. Perry Trust dated March 22, 1996, that assets in the Leonard W. Perry Trust dated March 22, 1996 were to be distributed according to the terms of the Muriel Perry Trust."

¶ 7    In 2008, Muriel again amended her will, making changes to certain bequests of the funds in her trust. However, in preparing the will, Greenfield "failed to include language that Muriel W. Perry was exercising her Power of Appointment from her deceased husband's trust." This error remained undiscovered until after Muriel's death. Approximately a month after Muriel's death, Greenfield disclosed his omission of the power of appointment in the 2008 will to the beneficiaries of the trust. The underlying plaintiffs claimed that Greenfield was negligent in failing to include the power of appointment provision and that as a result of that omission, they "have been deprived of monies for which they were the intended beneficiaries."

¶ 8    The complaint in the underlying action included as an exhibit the June 17, 2008, letter that ISBA Mutual claims relieved it of its duty to defend Greenfield and the firm. Since the language of the letter is central to the issue in the instant appeal, we relate the letter in its entirety. The letter provided:

> "You are receiving this letter because you are named in the Muriel Perry Trust as a beneficiary. The purpose of this letter is to give you the facts regarding the value of Trust

-3-

assets and the respective amounts of the distributions. As many of you know, for more than ten years I represented the late Leonard Perry and Muriel Perry in connection with their estate plan and during that time I came to know both of them well. I want to extend my sincere condolences to all the members of your family.

During his lifetime, Leonard Perry transferred his assets into the Leonard Perry Trust. The Leonard Perry Trust provided that upon the death of Leonard Perry the trust funds were to be used for the care, comfort and support of Muriel Perry. The Leonard Perry Trust further provided that Muriel Perry had the right to make changes or modifications to the plan of distribution by virtue of what is referred to as a 'Power of Appointment'. Accordingly, after Leonard died, Muriel had the right to 'appoint' the funds in Leonard's Trust as she wished, which is to say she had the right to make changes and modifications to the plan of distribution as she saw fit.

After the death of Leonard Perry, Muriel Perry executed a Will dated November 30, 2007, (the '2007' Will) in which she directed, pursuant to her Power of Appointment, that assets in the Leonard Perry Trust were to be distributed according to the terms of the Muriel Perry Trust. The effect of exercising the Power of Appointment in the 2007 Will was to change the distributions of trust funds as set forth in the Leonard Perry Trust to the distributions set forth in the Muriel Perry Trust.

Over a period of about a year before her death, I, along with Gary Cueno of JP Morgan Chase Bank, met several times with Muriel Perry for the purpose of discussing modifications she wanted to make to her Trust. During the course of these meetings, it was very clear that Muriel Perry had given much thought to these[ ] changes and they were the product of her careful and well reasoned consideration.

On April 14, 2008, I met with Muriel Perry and reviewed with her in great detail the changes to her Trust, as she had directed. At that meeting she reiterated her conviction that the changes clearly reflected her desire regarding disposition of her assets upon her death. At that meeting, Muriel Perry executed an amendment to the Muriel Perry Trust and she also executed a Last Will and Testament (the '2008 Will'). The 2008 Will contains what is referred to as a 'scrivener's error'. A scrivener is the somewhat old fashion [*sic*] word used to describe the person who writes a document, in this case a Will. I drafted the 2008 Will and inadvertently omitted a provision that had been contained in the 2007 Will.

The reason for the omission does not change the facts, but for your information, the 2008 Will[ ] was prepared by referring to an earlier computer generated version of the document. That earlier computer generated version of the document did not contain the specific language exercising the Power of Appointment. It was an oversight and there is no question that when Muriel Perry signed the 2008 Will she verily believed that the Trustee of her trust would carry out her specific directions.

The difference between the distribution to each beneficiary using the 2007 Will (which contains the Power of Appointment language) and the distribution to each beneficiary using the 2008 Will (which does not contain the Power of Appointment language), is detailed on the enclosed schedule titled 'Muriel and Leonard Perry Estate

Plan Distribution dated June 2008'. It is important to note that the figures used in the enclosed Muriel and Leonard Estate Plan Distribution are not final and were prepared for illustration purposes only.

The Co-Trustees of the Muriel Perry Trust are JP Morgan Chase Bank and Faye R. Grafton. The Co-Trustees have the obligation to carry out the wishes of Muriel Perry as she intended. There are several possibilities with respect to a course of action under these circumstances. The family members could honor the clearly stated intention of Muriel Perry and agree that distributions be made in accordance with Muriel Perry's Wishes as detailed on the enclosed Muriel and Leonard Perry Estate Plan Disposition. If the family members do not agree to honor the 2007 Will, they could agree to submit the matter to binding arbitration. In the absence of a unanimous agreement, the Co-Trustees would be forced to seek a judicial determination to resolve the scrivener's error. A judicial determination would involve all 27 beneficiaries and their respective lawyers and would be a costly and lengthy procedure.

I encourage you to promptly seek the advice of your individual attorney. Both myself and Gary Cueno are available to respond to inquiries from you or your attorney. The decision as to whether there will be a unanimous family agreement is something the Co-Trustees and all of you need to know as soon as possible.

I knew Leonard and Muriel Perry as two of the kindest, most gentle and caring people I have ever met. I am distressed about this situation and I am hopeful it can be resolved in a manner that pays homage to their memory. It should be understood that my position is to honor the wishes of Muriel Perry and I will fully cooperate with her family to achieve this goal.

I look forward to your early response."

¶ 9     On June 17, 2010, ISBA Mutual amended its complaint. The amended complaint was identical to the initial complaint, but attached as an exhibit the plaintiffs' amended complaint in the underlying action. The underlying plaintiffs' amended complaint added a copy of the "Muriel and Leonard Perry Estate Plan Disposition June 2008" referenced in the letter. The document contained each beneficiary's name, followed by two columns: one entitled "Muriel Perry's Wishes" and the other entitled "Current Estate Plan w/Scrivener's Error." According to that document, the underlying plaintiffs received less under the "Current Estate Plan w/Scrivener's Error" than they would have according to "Muriel Perry's Wishes"–under the "Current Estate Plan," the four underlying plaintiffs were entitled to a total of $919,900, but according to "Muriel Perry's Wishes," they should have received a total of $1,783,800.

¶ 10     On September 8, 2010, Greenfield filed a motion for summary judgment, arguing that he had an ethical duty to inform the beneficiaries of his mistake, that he did not admit liability but only informed the beneficiaries of what occurred, and that the letter did not prejudice ISBA Mutual because JP Morgan Chase Bank, the trustee, would have immediately informed the beneficiaries of the same matters if Greenfield had not done so. Attached to the motion for summary judgment was an affidavit from Greenfield stating that following Muriel's death, he was contacted by JP Morgan Chase Bank about the omitted phrase, and was informed that "if [he] determined not to inform the beneficiaries of the scrivener's error,

the bank would do so."

¶ 11    On October 7, 2010, ISBA Mutual filed its response to Greenfield's motion for summary judgment and a cross-motion for summary judgment. ISBA Mutual argued that Greenfield admitted liability for malpractice in the letter sent to the beneficiaries of Muriel's trust in violation of his insurance contract; ISBA Mutual denied that the policy would foreclose Greenfield from complying with his ethical obligation because Greenfield's letter went further than merely relating facts. ISBA Mutual also argued that Greenfield's claim that he recited facts was belied by his behavior in the underlying case. As support, ISBA Mutual's cross-motion for summary judgment included an order issued by the trial court in the underlying case, granting the underlying plaintiffs' motion to deem certain requests to admit as admitted. Several of these requests to admit were objected to by Greenfield on the basis that they called for legal conclusions; these requests to admit directly parroted language in the letter. ISBA Mutual argued that Greenfield could not argue that the same letter admitted facts in one action but was comprised of legal conclusions in the other. Finally, ISBA Mutual claimed that it was prejudiced by Greenfield's breach because by admitting liability, "Greenfield interfered with ISBA Mutual's contractual right of exclusive control over the attendant claim," and also noted that Greenfield waited almost a year before providing ISBA Mutual with notice of the claim.

¶ 12    On December 7, 2010, the trial court issued a written opinion in which it found that Greenfield's letter only admitted facts and did not admit liability. The court found that "[t]he fact that his statements supplied the heirs with what they might need to prove malpractice in the underlying suit does not automatically render him in violation of the 'Voluntary Payments' provision of the insurance policy," and noted that, while "Greenfield draws a fine line in his distinction, it [is] identical to the line the Appellate Court has already drawn" in *Blake v. Continental Casualty Co.*, 278 Ill. App. 232 (1934). The court further noted that while ISBA Mutual argued that its insurance policy did not preclude disclosure, "any limitation on an attorney's ethical duty to disclose raises public policy considerations." Finally, the court found that even if Greenfield had admitted liability, ISBA Mutual had not demonstrated that it was prejudiced by Greenfield's conduct, finding that "[a]ny claim of prejudice is speculative, at best." Accordingly, the trial court granted Greenfield's motion for summary judgment and denied ISBA Mutual's cross-motion for summary judgment.

¶ 13    On December 29, 2010, the trial court entered an order on ISBA Mutual's motion for clarification, stating that "the Court does not find that Plaintiff Illinois State Bar Association Mutual Insurance Company has a duty to indemnify because that issue is premature."

¶ 14    ISBA Mutual timely filed a notice of appeal, and this appeal follows.

¶ 15                                    ANALYSIS

¶ 16    On appeal, ISBA Mutual argues that the trial court erred in entering summary judgment in Greenfield's favor because Greenfield's breach of the policy provision relieved ISBA Mutual of any duty to defend him in the underlying action. A trial court is permitted to grant summary judgment only "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2008). The trial court must view these documents and exhibits in the light most favorable to the nonmoving party. *Home Insurance Co. v. Cincinnati Insurance Co.*, 213 Ill. 2d 307, 315 (2004). We review a trial court's decision to grant a motion for summary judgment *de novo*. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992). *De novo* consideration means we perform the same analysis that a trial judge would perform. *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011). " 'The construction of an insurance policy and a determination of the rights and obligations thereunder are questions of law for the court which are appropriate subjects for disposition by way of summary judgment.' " *Steadfast Insurance Co. v. Caremark Rx, Inc.*, 359 Ill. App. 3d 749, 755 (2005) (quoting *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 391 (1993)).

¶ 17      "Summary judgment is a drastic measure and should only be granted if the movant's right to judgment is clear and free from doubt." *Outboard Marine Corp.*, 154 Ill. 2d at 102. However, "[m]ere speculation, conjecture, or guess is insufficient to withstand summary judgment." *Sorce v. Naperville Jeep Eagle, Inc.*, 309 Ill. App. 3d 313, 328 (1999). A defendant moving for summary judgment bears the initial burden of proof. *Nedzvekas v. Fung*, 374 Ill. App. 3d 618, 624 (2007). The defendant may meet his burden of proof either by affirmatively showing that some element of the case must be resolved in his favor or by establishing " 'that there is an absence of evidence to support the nonmoving party's case.' " *Nedzvekas*, 374 Ill. App. 3d at 624 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). In other words, there is no evidence to support the plaintiff's complaint.

¶ 18      " 'The purpose of summary judgment is not to try an issue of fact but *** to determine whether a triable issue of fact exists.' " *Schrager v. North Community Bank*, 328 Ill. App. 3d 696, 708 (2002) (quoting *Luu v. Kim*, 323 Ill. App. 3d 946, 952 (2001)). However, "[w]hen, as in this case, parties file cross-motions for summary judgment, they concede the absence of a genuine issue of material fact and invite the court to decide the questions presented as a matter of law." *Steadfast Insurance*, 359 Ill. App. 3d at 755 (citing *Continental Casualty Co. v. Law Offices of Melvin James Kaplan*, 345 Ill. App. 3d 34, 37-38 (2003)). We may affirm on any basis appearing in the record, whether or not the trial court relied on that basis or its reasoning was correct. *Ray Dancer, Inc. v. DMC Corp.*, 230 Ill. App. 3d 40, 50 (1992).

¶ 19      In the case at bar, ISBA Mutual argues that the trial court erred in granting Greenfield's motion for summary judgment because its policy provision was enforceable, Greenfield admitted liability in his letter to the beneficiaries, and ISBA Mutual was prejudiced by the admissions in Greenfield's letter. Initially, we note that in Illinois, the duties to defend and to indemnify are not coextensive, with the obligation to defend being broader than the obligation to pay. *International Minerals & Chemical Corp. v. Liberty Mutual Insurance Co.*, 168 Ill. App. 3d 361, 366 (1988). In determining whether an insurer has a duty to defend its insured, a court looks to the allegations in the underlying complaint and compares them to the relevant provisions of the insurance policy. *Outboard Marine Corp.*, 154 Ill. 2d at 107-08. "If the facts alleged in the underlying complaint fall within, or potentially within, the policy's coverage, the insurer's duty to defend arises." *Outboard Marine Corp.*, 154 Ill. 2d at 108. However, if it is clear from the face of the complaint that the allegations fail to state

facts that bring the case within, or potentially within, the policy's coverage, an insurer may properly refuse to defend. *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.*, 144 Ill. 2d 64, 73 (1991) (quoting *State Farm Fire & Casualty Co. v. Hatherley*, 250 Ill. App. 3d 333, 336 (1993)). "[W]here an exclusionary clause is relied upon to deny coverage, its applicability must be clear and free from doubt because any doubts as to coverage will be resolved in favor of the insured." *International Minerals & Chemical Corp.*, 168 Ill. App. 3d at 367. "[W]here the language of an insurance policy is clear and unambiguous, it will be applied as written." *Hatherley*, 250 Ill. App. 3d at 337. The construction of an insurance policy presents a question of law that is reviewed *de novo*. *Outboard Marine*, 154 Ill. 2d at 108.

¶ 20    The first question we must consider is whether the voluntary payments provision in ISBA Mutual's insurance policy was enforceable. If it is not enforceable, then the question of whether Greenfield admitted liability or merely admitted the facts concerning his mistake is immaterial. Both parties acknowledge that, as an attorney, Greenfield had a duty to disclose his mistake to the beneficiaries. See, *e.g.*, *DeLuna v. Burciaga*, 223 Ill. 2d 49, 77-78 (2006) (attorneys have an ethical obligation to keep clients apprised of major developments in their cases). In fact, ISBA Mutual makes it clear that "ISBA Mutual *does not* contend that its policy required Greenfield to be silent about the disparity between Muriel's intentions in her 2008 will and the actual expected distributions under the actual legal instrument." (Emphasis in original.) However, ISBA Mutual claims that Greenfield went beyond his ethical obligation, since "he was not obliged to admit to the elements of a legal-malpractice action, as his letter did–certainly not before contacting his liability insurer to notify it of a possible claim for which the insurer might be responsible, and seek its advice in handling that delicate situation." We do not find ISBA Mutual's argument persuasive.

¶ 21    We note that there is very little case law concerning the effect of a "voluntary payments" clause such as that at issue in the case at bar. Indeed, the case at bar is essentially a case of first impression, as there is only one Illinois case that concerns the question of whether an insured admitted liability in violation of a provision of his insurance policy (see *Blake v. Continental Casualty Co.*, 278 Ill. App. 232 (1934)), and that case is no longer binding precedent (see *Bryson v. News America Publications, Inc.*, 174 Ill. 2d 77, 95 (1996) ("Appellate court decisions issued prior to 1935 ha[ve] no binding authority.")). ISBA Mutual argues that "an insured's breach of a voluntary-payments clause is a recognized coverage defense in Illinois," citing *Westchester Fire Insurance Co. v. G. Heileman Brewing Co.*, 321 Ill. App. 3d 622, 637 (2000). However, the voluntary payments clause in *Westchester* is quite different from the one here and was raised by the insurance company for a different purpose. There, the voluntary payments clause provided that " '[n]o "Insureds" will, except at their own cost, voluntarily make a payment, assume any obligation or incur any expense, other than for first aid, without our consent.' " *Westchester*, 321 Ill. App. 3d at 637. Unlike the case at bar, the provision did not include a clause preventing the insured from "admit[ting] any liability" without the insurance company's prior written consent. Additionally, the voluntary payments clause in *Westchester* was raised by the insurance company when the insured sought defense costs it incurred prior to giving the insurance company notice of the underlying action; it was not raised as a reason to find that the

insurance company did not have a duty to defend the insured.

¶ 22    The only Illinois case cited by either party concerning an analogous provision in an insurance policy is *Blake*, 278 Ill. App. 232. The automobile insurance policy in that case contained a provision providing that " '[t]he Assured shall not voluntarily admit any liability for an accident and no loss arising from a liability which has been voluntarily assumed by the Assured shall be covered hereunder.' " *Blake*, 278 Ill. App. at 233. The insured was involved in an automobile collision and, the next morning, he visited the hospital at which the driver and passenger of the other vehicle were admitted, telling them that " 'he was very sorry it happened; that it was all his fault.' " *Blake*, 278 Ill. App. at 234. The insured was " 'greatly upset and took the whole blame and assured [the other driver] that he and his wife would be taken care of,' or to put it in other words, the witness says that [the insured] stated 'that he was very, very sorry it happened and he did not mean to do it and meant no harm to anyone, that he just lost his head completely; it was something he wouldn't have had happen but he simply lost his head, and didn't know what to do.' " *Blake*, 278 Ill. App. at 234.

¶ 23    The appellate court, after considering cases from other jurisdictions, found that the insured's language "[did] not amount to a voluntary admission of liability which we presume means a legal liability," noting that "[i]t is one thing to admit a fault, but it is quite another and quite a different thing to admit or assume a legal liability." *Blake*, 278 Ill. App. at 235-36. The court also found:

> "Here, so far as the evidence discloses, substantially all the assured did was to state in the presence of the injured the facts with regard to the accident. It is not suggested that what Blake said was not true. The insurance company might properly contract with the assured that he should not in any way prevent a fair and just trial on the question of liability, but we think it might not lawfully contract for conduct on the part of the assured, which would amount to a suppression of evidence as to the actual facts. Such contract or such provision in the contract, would, we hold, be invalid as contrary to and against public policy [citations] and the burden of proof in respect to voluntary admissions which would prevent a recovery under the contract rests upon defendant." *Blake*, 278 Ill. App. at 236-37.

Finally, the court approved a rule stated in a case from Louisiana that "an admission of fault did not amount to an assumption of liability, since it amounted only to an admission of the truth of the fact from which liability might flow, while an assumption of liability brought into existence a contractual obligation." *Blake*, 278 Ill. App. at 237 (citing *U-Drive-It Car Co. v. Freidman*, 153 So. 500, 502-03 (La. Ct. App. 1934)).

¶ 24    The situation in the case at bar is slightly different than that present in *Blake*. The public policy considerations at issue here also include the attorney's ethical obligations to his client. ISBA Mutual claims that it would not have interfered with Greenfield's discharge of his professional duties, but argues that it "would certainly have played a role in his disclosure of his error and its consequences, even if only by advising Greenfield in how to fulfill his ethical obligations in a way that would not compromise his defense to a malpractice case." However, we are uncomfortable with the idea of an insurance company advising an attorney of his ethical obligation to his clients, especially since, as in the case at bar, the insurance

company may advise the attorney to disclose less information than the attorney would otherwise choose to disclose. Instead, absent instruction from the rules of professional conduct or the Attorney Registration and Disciplinary Commission, it is the attorney's responsibility to comply with the ethical rules as he understands them. Accordingly, we find that a provision such as the one at issue here is against public policy, since it may operate to limit an attorney's disclosure to his clients. Consequently, since the voluntary payment clause does not provide a defense to ISBA Mutual, we affirm the trial court's grant of summary judgment in Greenfield's favor.

¶ 25 As a final matter, we note that we do not consider the issue of prejudice in our decision. ISBA Mutual argues that it was prejudiced by Greenfield's failure to obtain ISBA Mutual's consent prior to sending the letter to the beneficiaries, and Greenfield argues that there was no prejudice. However, since we are affirming the trial court's decision based on public policy, there is no need to reach the issue of whether ISBA Mutual was prejudiced by Greenfield's conduct.

¶ 26                                          CONCLUSION

¶ 27 The insurance policy's voluntary payment clause did not relieve ISBA Mutual from its duty to defend Greenfield since the clause was unenforceable as against public policy. Consequently, the trial court's grant of summary judgment in Greenfield's favor is affirmed.

¶ 28 Affirmed.

¶ 29 JUSTICE GARCIA, specially concurring.

¶ 30 I do not join in the majority's conclusion that the "Voluntary Payments" provision of the professional liability policy issued by the Illinois State Bar Association Mutual Insurance Company (ISBA Mutual) violates public policy because "it may operate to limit an attorney's disclosure to his clients." *Supra* ¶ 24; see *Country Preferred Insurance Co. v. Whitehead*, 2012 IL 113365, ¶ 28 ("In deciding whether an agreement violates Illinois public policy, we must determine whether the agreement is so capable of producing harm that its enforcement would be contrary to the public interest."). I reach the same result as the majority on narrower grounds.

¶ 31 The voluntary payments provision provides:

"The INSURED, except at its own cost, will not admit any liability, assume any obligation, incur any expense, make any payment, or settle any CLAIM, without [ISBA Mutual's] prior written consent."

Only the "admit any liability" prohibition in the voluntary payment provision is at issue in this case. While it is clear that an attorney must disclose a professional omission to his client, it is far less clear how much detail an attorney must disclose to meet that ethical obligation. See *DeLuna v. Burciaga*, 223 Ill. 2d 49, 77 (2006) (an attorney as fiduciary has a duty to disclose "material facts"). I am certain, however, that an attorney has no ethical duty to "admit any liability" to third parties to whom he failed to fulfill his legal duty, which renders

-10-

the "admit any liability" prohibition no threat to the public's interest. *Whitehead*, 2012 IL 113365, ¶ 28.

¶ 32     Nevertheless, the majority and I agree that the circuit court did not err in its judgment that ISBA Mutual has a duty to defend attorney Greenfield in the professional negligence suit filed by the underlying plaintiffs. Generally, we compare the allegations of the underlying complaint to the relevant portions of the insurance policy to determine whether an insurer has a duty to defend an insured. *American Family Mutual Insurance Co. v. Fisher Development, Inc.*, 391 Ill. App. 3d 521, 525 (2009). "If the complaint alleges facts that fall within or potentially within the coverage of the policy, 'the insurer is obligated to defend its insured even if the allegations are groundless, false, or fraudulent.' " *Id.* (quoting *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.*, 144 Ill. 2d 64, 73 (1991)). I find it indisputable that a legal malpractice suit falls within the coverage of an attorney professional liability policy, as the policy ISBA Mutual issued to attorney Greenfield plainly provides. Coverage is triggered under a professional liability policy when the claim against the attorney arose from an "act or omission in performance of legal services" and the recovery sought falls within the policy's definition of damages. *Continental Casualty Co. v. Law Offices of Melvin James Kaplan*, 345 Ill. App. 3d 34, 39 (2003)). ISBA Mutual does not dispute that each requirement for coverage was met in this case. A duty to defend a named insured in a malpractice suit necessarily follows from the malpractice coverage provided in the policy.

¶ 33     Nor do I accept ISBA Mutual's implicit contention that the voluntary payment provision is some sort of *exclusionary* clause that precludes coverage, such that it may be invoked to deny a duty to defend. *Cf. State Farm Fire & Casualty Co. v. Young*, 2012 IL App (1st) 103736, ¶ 42 ("the exclusion clauses and the coverage clauses of the two polices expressly exclude and provide no coverage for intentional conduct," which the face of the underlying complaint clearly alleged, precluding a duty to defend). Where the insurer rejects a tender of defense based on a provision that it contends excludes coverage, we review the applicability of that provision to ensure it is " 'clear and free from doubt' that the policy's exclusion prevents coverage." *American Family*, 391 Ill. App. 3d at 525 (quoting *Atlantic Mutual Insurance Co. v. American Academy of Orthopaedic Surgeons*, 315 Ill. App. 3d 552, 560 (2000)). What is "clear and free from doubt" is that attorney Greenfield procured the malpractice policy from ISBA Mutual to cover him in the event of a malpractice suit, which the underlying plaintiffs plainly filed against him. See *Economy Fire & Casualty Co. v. Brumfield*, 384 Ill. App. 3d 726, 731 (2008) (where insurer did not claim that allegations in underlying "complaint fell outside *** policy coverage" but, rather, claimed that "statements" from the purported insured rendered him a nonpermissive driver, insurer could not justifiably refuse to defend).

¶ 34     Nor do I accept as accurate ISBA Mutual's characterization of the voluntary payment provision as a sort of "notice" provision, as it stressed at oral argument. ISBA Mutual complains in its main brief that attorney Greenfield wrote to the beneficiaries "without notifying ISBA Mutual of his intention to do so." I doubt that ISBA Mutual would have been satisfied had attorney Greenfield sent notice of his intention to inform the beneficiaries under his client's will of his professional omission prior to sending the letter that is at the center of this dispute. The provision has little to do with "notice" and everything to do with ISBA

-11-

Mutual's attempt to prohibit certain conduct of its insured. The provision is more accurately characterized as a "permission" clause because the consequences of violating the voluntary payments clause can be avoided only if ISBA Mutual gives "prior written consent" to its insured to engage in the policy-prohibited conduct. I submit it is doubtful attorney Greenfield would have received permission had he given ISBA Mutual timely notice of his letter.

¶ 35    The circuit court also correctly rejected ISBA Mutual's summary judgment motion based on the reasoning in *Blake v. Continental Casualty Co.*, 278 Ill. App. 232, 235-36 (1934), which concluded that a difference exists between admitting liability and admitting fault.[1] Presumably, ISBA Mutual wrote the policy using the term "liability" instead of "fault" for a reason. As the *Blake* court recognized, "liability" in the lexicon of insurance companies and lawyers means "legal liability." *Id.* at 235-36. "It is one thing to admit a fault, but it is quite another and quite a different thing to admit or assume legal liability." *Id.* at 236. Any contention by ISBA Mutual that "legal liability" was not meant by the phrase at issue here may well render the voluntary payment provision ambiguous. An ambiguous provision in an insurance policy will be construed in favor of the insured and against the insurer "because there is little or no bargaining involved in the insurance contracting process [citation], the insurer has control in the drafting process, and the policy's overall purpose is to provide coverage to the insured [citation]." *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 119 (1992).

¶ 36    Ultimately, I reject ISBA Mutual's contention that a violation of the voluntary payment provision, even assuming such a violation could be demonstrated at the early stage of the underlying litigation, voids the duty to defend under the policy, a duty that is broader than its duty to indemnify. *Young*, 2012 IL App (1st) 103736, ¶ 12 ("Indemnification is a separate question from the much broader duty to defend."). The phrase "except at [the insured's] own cost" conveys that it is the duty to indemnify that is at stake when an insurer claims that an insured breached the voluntary payment provision. Notably, ISBA Mutual offers no authority to support its contention that a violation of the voluntary payment provision nullifies its duty to defend. See *Westchester Fire Insurance Co. v. Heileman Brewing Co.*, 321 Ill. App. 3d 622, 637 (2001) ("A voluntary payment provision provides that an insurer will not be held liable for expenses voluntarily incurred by an insured before tendering defense of a suit to the insurer."). The implication of *Westchester Fire* is that an uncontested violation of the voluntary payment provision does not free the insurer from defending its insured; rather, *Westchester Fire* holds that the violation of the provision relieves the insurer only from an obligation to reimburse its insured for expenses incurred prior to tendering suit. *Id.*

¶ 37    In the context of this case, if attorney Greenfield admitted liability in his communication to the intended beneficiaries of his deceased client's will, attorney Greenfield did so "at [his] own cost," as the voluntary payment provision expressly provides. In other words, should the insured engage in conduct prohibited by the voluntary payment provision, the insurer, absent giving prior written consent, is relieved of responsibility to indemnify the insured. *Cf. id.* (no

---

[1]While *Blake*, as a pre-1935 appellate court opinion, is not binding authority, its reasoning remains persuasive.

contention that insurer's duty to defend was discharged when the insured incurred "expenses," which constituted voluntary payments under the voluntary payments clause, prior to tendering suit to the insurer).

¶ 38 I conclude that ISBA Mutual unquestionably owes a duty to defend attorney Greenfield under his malpractice policy against the malpractice suit filed by the underlying plaintiffs. The voluntary payment provision implicates only ISBA Mutual's duty to indemnify should attorney Greenfield be found to have admitted liability. Of course, ISBA Mutual's duty to indemnify is not ripe for consideration where the policyholder has not been found liable. See *Outboard Marine Corp.*, 154 Ill. 2d at 127 (the duty to indemnify "is only ripe for consideration if the insured has already incurred liability in the underlying claim against it"). Whether attorney Greenfield's letter can be read as having admitted "liability," as the policy provision prohibits, turns on the resolution of the malpractice suit, which will disclose the role attorney Greenfield's letter of June 17, 2008, played in any judgment of negligence entered against him. The circuit court's rejection of ISBA Mutual's claim of prejudice caused by Greenfield's letter as "speculative at best" likewise reveals the claim to be premature. ISBA Mutual's claim of prejudice is unpersuasive less so because it is grounded on speculation and more so because prejudice cannot be proved at this juncture of the underlying litigation. It is possible prejudice can be shown if attorney Greenfield's letter went beyond the facts that could be proved at trial without his letter. That is a determination that cannot be made as of yet.

¶ 39 In sum, the analysis undertaken by a court to determine whether a liability insurance company has a duty to defend its insured in an underlying suit, which invariably involves a comparison of the allegations in the underlying complaint to the risk covered by the policy, renders frivolous ISBA Mutual's contention that it owed no duty to defend attorney Greenfield. The insurer's duty to defend under a professional liability policy against a malpractice suit is manifest. I construe the "Voluntary Payment" provision as impacting only ISBA Mutual's duty to indemnify, not its broader duty to defend attorney Greenfield.

¶ 40 I specially concur in the judgment.